90 U.S. 508
 23 L.Ed. 78
 23 Wall. 508
 UNITED STATES
v.
SHREWSBURY.
 October Term, 1874
 
 APPEAL from the Court of Claims.
 The case § found by the Court of Claims was thus:
 On the 27th of March, 1865, W. S. Shrewsbury entered into a contract with the United States to transport army stores from Fort Leavenworth, Kansas, and other forts there and in Missouri, to Fort Lyon and other forts in the Territories of Colorado and New Mexico.
 The contract contained a clause thus:
 'In all cases where stores have been transported by the said Shrewsbury, under this agreement, a board of survey shall be called without delay, upon their arrival at the point of destination or delivery, to examine the quantity and condition of the stores transported, and in cases of loss, deficiency, or damage, to investigate the facts and report the apparent causes, assess the amount of loss or injury, and state whether it was attributable to neglect or the want of care on the part of the contractor, or to causes beyond his control; and these proceedings, a copy of which shall be furnished to the contractor, shall be attached to the bill of lading, and shall conclude the payments to be made on it.
 'For loss of weight due to shrinkage . . . the contractor shall not be liable, if the packages are delivered in good order and condition, and the board of curvey shall be satisfied that such shrinkage did not arise from neglect or want of care on the part of the contractor or his agents.
 'For deficiencies or damages, the contractor shall pay the costs at the point he receives the articles, and freight shall be deducted in the latter case in proportion to the amount of damage assessed. Should no board of survey be called, through failure on the part of the quartermaster's department or other military authority to convene one, it shall be considered that the contractor has delivered all the stores, as specified in the bill of lading, in good order and condition, and he shall be paid accordingly.'
 On the 2d of June, 1865, one of Shrewsbury's transportation trains—train No. 124—received, at Fort Leavenworth, 858 sacks of corn, weighing in the aggregate 101,860 pounds, averaging 118 3/4 pounds per sack. The train arrived at Fort Lyon, Colorado, in the latter part of July, and delivered the corn in good order, except that 9 sacks, amounting to 1069 pounds, were lost. But, by reason of the difference or imperfection of the scales used in the determination of the weight of the remainder and the shrinkage in weight upon the road, the remaining 849 sacks were reported to weight only 97,620 pounds instead of 100,791 pounds, their weight when they left Fort Leavenworth, and Shrewsbury was charged with the loss of 3171 pounds. A board of survey was ordered on the 31st July, 1865, which met on the 1st August, 1865, and examined the supplies delivered.
 The following were the proceedings of the board, as reported to the commanding officer, and as attached to the bill of lading:
 'Proceeding of a board of survey which assembled at Fort Lyon, C. T., by virtue of the following order, viz.:
 'HEADQUARTERS, FORT LYON, C. T.,
 'July 31st, 1865.
 [Special Order No. 145.]
 'A board of survey is hereby ordered to meet at the commissary building to-morrow morning, at 9 o'clock, or as soon thereafter as practicable, to examine and report upon the quantity and condition of certain commissary and quartermaster stores being received by Lieutenant C. M. Cossett, Acting Assistant Quartermaster, and A. C. S.
 'Detail for the Board.
 'First Lientenant J. A. Cramer, veteran battalion, First Colorado Cavalry.
 'First Lieutenant Henry Gronheim, Fifteenth Kansas Cavalry.
 'By order of Theo. Conkney, captain, commanding post.
 'JAMES OLNEY,
 'Second Lieutenant and Post Adjutant.
 'FORT LYON, C. T.,
 'August 1st, 1865.
 'The board met pursuant to the above order.
 'Present: First Lieutenant J. A. Cramer, veteran battalion, First Colorado Cavalry, and First Lieutenant Henry Gronheim, Fifteenth Kansas Cavalry, and proceeded to examine the supplies delivered by freight contractor W. S. Shrewsbury, in contractor's train No. 124, Fort Lyon, No. 5, a d find as follows:
 'Packages all correct, and in good order, with the exception of nine sacks of corn deficient; weight agreeing with the bill of lading with the exception of 4240 pounds of corn deficient.
 'The board, therefore, recommend that the deficiency of corn be charged to the freight contractor, and that Lieutenant C. M. Cossett, Acting Assistant Quartermaster, be permitted to drop said deficiency from his return.
 'The board then proceeded to other business.
 These minutes were signed in form by the officers composing the board.
 In pursuance of the foregoing recommendation Shrewsbury was charged by the quartermaster department for the loss of 9 sacks of corn, and in addition to the 9 sacks of corn with the 3171 pounds of difference in weight of the remainder of the corn before mentioned, and for this difference $449.61 was deducted from his account. He had never been paid this balance. A general account was stated between the parties showing the amount allowed and deducted, entitled:
 'An account for the transportation of military stores from Fort Leavenworth, Kansas, to Fort Riley, Kansas, under contract with the United States, dated March 27th, 1865, as per the accompanying bills of lading, receipts, and proceedings of boards of survey, to wit.'
 The claimant was paid the total of the amounts allowed, and at the foot he gave the following receipt:
 'Received, at Fort Leavenworth, Kansas, the 23d of October, 1865, of Captain H. L. Thayer, Assistant Quartermaster, United States Army, the sum of $91,243.60, in full of the above account.
 'W. S. SHREWSBURY.'
 At the time of receiving payment Shrewsbury protested against the deduction, and notified the quartermaster who made the payment that he should look to the United States for a corrected adjustment and full payment.
 The Court of Claims, upon the foregoing facts, decided as conclusions of law:
 That as to the shrinkage of corn and difference of weight, the proceedings of the board of survey did not conform to the terms of the contract, inasmuch as the board did not investigate the facts nor report the apparent causes, nor state whether the loss was attributable to neglect or the want of care on the part of the contractor, or to causes beyond his control; and that for the amounts thus withheld the claimant should recover.
 Nott, J., in delivering the opinion of the court said:
 
 
 1
 'The sacks of corn averaged 118 3/4 pounds per sack. It is, therefore, apparent that the nine missing sacks (for which no claim is made by the contractor) could not have weighed 4240 pounds when received at Fort Leavenworth, and that if 'the packages' were all correct and in good order, as found by the board, the deduction ordered was an arbitrary deduction, which any clerk could have made by a simple comparison of the two weights, and which involved the exercise of no real examination or discretion.
 
 
 2
 'But the rule which the parties established for themselves by their agreement was, that in case of 'deficiency' the board of survey should 'investigate the facts and report the apparent causes and assess the amount of loss or injury, and state whether it was attributable to neglect or the want of care on the part of the contractor, or to causes beyond his control.' In none of these particulars do the proceedings of the board in any manner carry out the intent and terms of the contract. The board did not investigate the facts, it did not report the apparent causes, it did not state whether the loss was attributable to neglect or to the want of care of the part of the contractor, or to causes beyond his control. As to all of these particulars the contractor had the right to receive the investigation of the board, and the contract was so rigid in assuring him of that right, that it provided that if the other party, who alone had the right to convene a board, should fail to do so, he should be deemed to have 'delivered all the stores, as specified in the bill of lading, in good order and condition, and be paid accordingly.' We do not mean to say that the failure of a board to investigate after it has been property convened will work the same result in favor of a contractor, but we do think that when a board is convened it must carry out the intent of the agreement in its investigations, or else that its proceedings will not be conclusive and binding upon the contractor.'
 
 
 3
 The judgment of the court was that the claimant recover. The United States took this appeal.
 
 
 4
 
 Mr. G. H. Williams, Attorney-General, and Mr. John Goforth, Assistant Attorney-General, for the appellant:
 
 
 
 5
 1. The reports of the board of survey contained everything made necessary by the terms of the contract. The condition of the stores was reported, the deficiency in weight noted, and the liability of the contractor for damages and deficiencies, contained in the recommendations of the boards. The exact form of report was left to the judgment of the boards.
 
 
 6
 2. If there were any informalities in the reports of the boards of survey, the claimant waived them by acquiescence in the conclusions of the reports, and acceptance of payment on the vouchers or bills of lading, which included the deductions ordered by the boards, as in full of all services of the various trains against which the boards had charged deficiencies. The agreement was to submit the questions of the condition and quantity of the stores transported by the claimant to boards of survey, and their reports were to be conclusive as to the payments to be made on the bills of lading or vouchers. Boards were ordered, and they not and examined the transported stores, and their proceedings were attached to the bills of lading. No protest or objection was made to the composition, the proceedings, or reports of the boards, nor any charge made of informity in the proceedings of reports. The claimant accepted the conclusions of the boards, as in full payment of all services rendered, and then protested against the deductions made by the boards. The boards were in the nature of an arbitration, acting for both parties.
 
 
 7
 Where there is a submission to arbitration, after a ratification of an award and execution of its requirements, it is too late for the parties to set up any defect in the proceedings or in the award.[1]
 
 
 8
 3. The taking of the amount allowed by the boards of survey appointed pursuant to the contract, i. e., by the act of both parties, and giving the receipts as in full payment for all services rendered by certain trains, bring the case within the ruling of the Supreme Court in the cases of Justice,[2] of Mason,[3] and of Sweeney,[4] notwithstanding a promise on the part of the claimant to look elsewhere for the amount of the deductions. In fact this case is more favorable for the United States than those quoted, because it is an acceptance of an award which the contract says shall conclude all payments on the bills of lading.
 
 
 Mr. C. F. Peck, contra:
 
 
 9
 1. It was optional with the government whether a board of survey should be called in any case. Its proceedings were to be all for the benefit of the defendant, its action and proceedings were ex parte, and it was composed entirely of government officers. On these accounts it is the more imperative that the contract be construed strictly. If no board should be called, it was to be considered that no deficiency existed, and that full payment should be made.
 
 
 10
 The contractor consented that the officers constituting the board of survey might, for the purpose of ascertaining whether he had done his duty, do certain things, viz.:
 
 
 11
 1st. Examine the quantity and condition of the stores transported, and in cases of loss, deficiency, or damage,
 
 
 12
 2d. To investigate the facts.
 
 
 13
 3d. To report the apparent causes.
 
 
 14
 4th. To assess the amount of loss or injury.
 
 
 15
 5th. To state whether it was attributable to neglect o want of care on the part of the contractor or to causes beyond his control.
 
 
 16
 These five points were to be passed upon by the board, if the government questioned his claim to full pay; but if they undertook to act at all, they were to act in the way prescribed.
 
 
 17
 The court below, whose conclusions of fact cannot be appealed from, says truly:
 
 
 18
 'The board did not investigate the facts; it did not report the apparent causes; it did not state whether the loss was attributed to neglect or the want of care on the part of the contractor, or to causes beyond his control.'
 
 
 19
 The board, therefore, ended the investigation where it should have begun it. Having ascertained that there was a deficiency, and the amount of it, then the issue arose as to whom it should be charged. For this purpose they were required to go on and investigate the facts concerning the deficiency, to report the apparent causes of the deficiency, and to state whether, in their judgment, it was attributable to neglect or want of care on the part of the contractor, or to causes beyond his control.
 
 
 20
 The proceeding which was provided for secured a body in the nature of arbitrators. Now, it is settled that the power and authority of an arbitrator is derived entirely from the submission; he must therefore make his award strictly in pursuance and in conformity with the submission. It is a general rule that unless the arbitrator makes his award of all matters submitted to him the award is entirely void.
 
 
 21
 2. It is next said that if there were any informalities in the reports of the boards of survey, the claimant waived them by acquiescence in the conclusions of the reports and acceptance of payment on the vouchers or bills of lading.
 
 
 22
 The argument proceeds upon the misapprehension that the contractor obtained an award in his favor, and received the money. Such is not the fact. The board of survey had no jurisdiction over the matter of freight-money; that was definitely fixed by the contract, there was no controversy concerning it. There was no award, and could be none, as to the moneys earned by the contractor, but the report had reference solely to the counter charges claimed by the United States. The moneys received by the claimant had no reference to the matters considered by the board, and they were both paid and received with an explicit understanding that it was not to be a final adjustment.
 
 
 23
 The two cases cited on the other side in support of an opposite view, are based upon the principle that a party cannot take the benefits of an award without accepting its disadvantages. There is no such principle involved here. The claimant took that which had no relation to the controversy, submitting for the time to the reduction, but giving notice that he would claim the amount withheld.
 
 
 24
 3. The final ground of defence is that the claimant is concluded by the acceptance of the money and the receipt he signed.
 
 
 25
 The gist of the inquiry is whether the money was paid and accepted as a satisfaction. Undoubtedly, if it was, there is an end of the case. If it was not, the right of action remains.
 
 
 26
 This court has had occasion to repeatedly consider the precise question, under what circumstances will the payment and receipt of money be held as sufficient evidence of this satisfaction? Of course the intention of the parties must govern, not the secret intentions or mental reservations, but the intention as evidenced by their acts and plain declarations. There is nothing in any of the cases cited by the other side—neither Justice's, nor Mason's, nor Clyde's—which deny this.
 
 
 27
 Even upon the extreme view taken by the Attorney-General, that the board of survey passed upon the whole claim, and that the claimant accepted the money under its award, it was only required in order to preserve all of his rights that he should protest at the time of receiving the money that it was not in satisfaction of the whole claim.[5] If after such protest the officers saw fit to pay him, his status was not affected by such payment.
 
 
 28
 Mr. Justice SWAYNE delivered the opinion of the court.
 
 
 29
 The counsel for the appellee maintains that the Court of Claims in holding as it did for nought the findings and recommendations of the board was right, because the agreement was, that in case of deficiency, the board should 'investigate the facts and report the apparent cause, and assess the amount of loss or injury, and state whether it was attributable to neglect or want of care on the part of the contractor, or to causes beyond his control,' and that their proceedings failed to carry out the intent and terms of the contract in these particulars. This is too narrow and technical a view of the subject. The provision of the contract touching the board was important to the government. The points of delivery were in the wilds of the West. If there was any failure by the contractor, the time and place of delivery were the time and place to ascertain the facts, and to put the evidence in an effectual shape. Afterwards it might be impossible for the government to procure the proofs, and if it were done, the expense might greatly exceed the amount of the items in dispute. At the delivery, the bill of lading spoke for itself. The teamsters and guards who accompanied the train were present, and could readily be examined. It is said by the Court of Claims, in their conclusions of law, that the board failed to make the requisite investigations of the facts. To do this was one of the most important duties devolved upon them. It is to be presumed they discharged it. They did not say, in terms, that they had done so, but they reported conclusions carrying with them the strongest implication that what was recommended rested on a basis of ascertained facts. The board, as honest men, could not have announced such results without the proper previous examination. The means were at hand, and the work was easy. A formal and technical instrument was not to be expected from military men acting under such circumstances. We think the reports were sufficient, and that they conform in every substantial particular to the requirements of the contract.
 
 
 30
 It does not appear that the contractor objected either as to form or substance when the reports were made, nor that he disclosed any objection subsequently until the time of payment. Nor did his objections then assume a definite shape. He notified the quartermaster that he should claim 'a readjustment and full payment.' The reasons and grounds of the claim were not stated. The payments were made at a distant point and after the lapse of several months. The witnesses were then scattered and gone. Most of them doubtless were difficult if not impossible to be found. As the contractor was silent when he should have spoken, he cannot be permitted to speak at the later period, in the altered condition of things, which then existed, as regards the other party. He must be held to have waived any exception which he might have taken at the proper time, and to have been, when the payments were made, finally concluded.
 
 
 31
 JUDGMENT REVERSED, and the case remanded, with directions
 
 
 32
 TO DISMISS THE PETITION.
 
 
 33
 Mr. Justice FIELD dissented.
 
 
 
 [1]
 Hoogs v. Morse, 31 California, 128; Tudor v. Scovell, 20 New Hampshire, 174.
 
 
 [2]
 14 Wallace, 535.
 
 
 [3]
 17 Id. 67.
 
 
 [4]
 Ib. 75.
 
 
 [5]
 United States v. Justice, 14 Wallace, 535.