## CARR v. JAEGER MACH. CO.
### No. 5016.

Circuit Court of Appeals, Seventh Circuit.

March 6, 1934.

Henry B. Floyd, of Chicago, Ill., for appellant.

Mark A. Copeland, of Cleveland, Ohio, for appellee.

Before ALSCHULER, EVANS, and FITZHENRY, Circuit Judges.

ALSCHULER, Circuit Judge.

The question involved is whether appellant was justified in undertaking to determine, before its maturity, a contract whereby he had licensed appellee to manufacture and sell a certain road machine, called "subgrader," under appellant's United States patent No. 1,268,925—Re. 15,615—during the term of the patent.

Appellant, asserting that appellee had breached the contract, threatened to terminate it, and appellee filed a bill in equity to restrain appellant from so doing. Appellant answered, asserting breaches of the contract and asking the affirmative relief of its termination. The District Court found against appellant, awarding injunction against his terminating the contract, and dismissing his counterclaim for want of equity.

The contract was dated June 2, 1923, and provided for a royalty of five per cent. to January 1, 1924, and thereafter ten per cent. of the retail selling price of each machine. In 1927 the contract was amended changing the royalty to $50 on each machine. Up to the hearing of the suit appellee had manufactured and sold over 1,200 subgraders under this contract, which were sold for upwards of $1,000,000, and had paid to appellant $57,-000 in royalties. For some years just before that contract was made the parties had had many dealings together, aggregating large sums.

In appellant's answer and counterclaim many breaches are alleged. Those mainly relied on are thus stated in appellant's brief: "1. Failure to number machines consecutively. 2. Failure to make full and correct reports on time. 3. Failure to pay royalties, this breach being expressly made by the contract a cause of termination thereof."

The contract provides that on each ma-

chine there shall be placed a plate having consecutively the number of each machine. It further specifies that appellee shall make timely, full, and correct report of sales; and that royalties shall be promptly paid as specified in the contract, and that failure to pay after a time fixed shall be a cause for terminating the contract.

It appears that for the seven and one-half years of operation under the contract prior to the beginning of the suit appellee, as a general rule, made its reports and remittances as specified in the contract and complied with its terms. But it seems that, upon going back over the accounts after the suit had been brought, it was discovered that four or five machines had escaped inclusion in the accounting. Upon recasting the accounts appellee assumed to discover that in the earlier part of the agreement it had overpaid appellant about $400, and this happened to more than cover the royalties which would have been due on those unreported machines; and the court so found.

It is urged as a breach by appellee that in several instances the report of sales showed a sale price less than was actually paid. Had this occurred while the royalties were on a percentage basis, as provided in the original contract, it might have been to appellant's disadvantage; but occurring, as it did, after the royalty was a fixed sum per machine, there would have been no advantage to appellee nor loss to appellant. We need not discuss appellee's explanation of these few occurrences.

There was failure to account for royalty on five or six road-grading machines of a type which appellee had lately developed—a large power machine to sell for about ten times as much as the subgrader. Evidently it was the development of these machines which seems to have precipitated the controversy. Appellant claimed appellee should pay the royalty thereon because the machines embodied his patent; appellee contended they did not embody the patent, and that no royalty should be paid on them. It was agreed that the matter should be referred to their respective patent attorneys for investigation. Appellant did not await the outcome of such investigation, but gave notice that he would terminate the contract.

After the suit had been started appellee did pay, and appellant accepted, the royalty claimed on each one of these machines. It transpired that these machines were not a success and did not enter into the trade.

■ The contention as to not attaching the label applies to these machines which appellee contended were not made under the patent. Appellee concedes the contention that the subgraders were not always consecutively numbered, maintaining that it was more convenient to begin the numbering of different lots with separate numbers for certain customers to whom different lots were sold. It seems that for a number of years after the contract was made appellant was one of the board of directors of appellee, and that besides such knowledge of appellee's affairs as would thus come to him he received regularly the reports showing the numbers of the machines and giving such other information as was required; and that appellant regularly received these reports and the remittances, and thus had knowledge of all that was being done in this regard. His long acquiescence in this evidently inconsequential deviation from the strict terms of the contract is quite apparent. Equity will not permit him to reach back into the long past and bring forth such matters as a pretext for terminating the contract. Hayward v. Eliot National Bank, 96 U. S. (6 Otto) 611, 24 L. Ed. 855; United States v. Shrewsbury, 23 Wall. 508, 23 L. Ed. 78; Bu-Vi-Bar Petroleum Corp. v. Krow (C. C. A. 10) 40 F.(2d) 488, 69 A. L. R. 1295.

■ In this long series of dealings, involving large sums and many items, there appear surprisingly few of such slips and omissions as might reasonably have been expected, and there is entire absence of any indication of deliberate and purposeful commission or omission on the part of appellee with any intent of defrauding or circumventing appellant. There is no basis for the stoutly maintained contention that by paying after suit brought the royalty on the few large machines appellee thereby confessed its inequitable conduct toward appellant through having withheld the payment. It is evident that appellee thought the patent did not cover these machines, but that payment of this comparatively small royalty on these few and discontinued machines would be the easiest and most inexpensive way of disposing of this branch of the controversy.

■ In view of the extensive business transacted under the license contract, we would regard it highly inequitable to permit appellant to terminate the contract because of the very few and far-between slight infractions of the contract which the evidence discloses.

We conclude that the District Court properly disposed of the case, and the decree is affirmed.