WASHBURN & MOEN MANUF'G CO. *v.* FREEMAN WIRE CO.

*(Circuit Court, E. D. Missouri, E. D.* February 21, 1890.)

1. SPECIFIC PERFORMANCE—REQUISITES OF CONTRACTS—PATENTS.
    Where a patentee licenses another to manufacture the patented article, and the licensee agrees to pay royalty, to make monthly reports of sales, to admit the validity of the patent, and to give its co-operation in maintaining the patentee's business and the patent under which the license is issued, the patentee reserving the power to revoke the license, the contract cannot be specifically enforced, the covenant as to co-operation being too vague, and the remedy of the patentee, by revocation of the license or action at law, being ample.

2. EQUITY—ACCOUNTING—PATENTS.
    A bill for an accounting, under such contract, will not be entertained, the remedy at law being ample.

In Equity. On demurrer to bill.

The bill in this case avers, in substance, that complainant is the owner of certain barbed fence wire patents, and that on or about May 1, 1888, it granted a license to defendant to manufacture and sell certain styles of barbed fence wire to the amount of 6,000 tons per annum; that by the terms of the license defendant agreed to pay a royalty of 15 cents per hundred pounds on all fence wire so manufactured and sold, and to pay the same monthly; that the licensee agreed to make monthly reports to the licensor of the number of pounds of fence wire sold, and also of the number of pounds consigned by the licensee during the preceding month, and that such reports should give the names and residences of the persons to whom sales had been made, and should also show in detail the prices and terms of delivery and payment; that the licensee also agreed to admit the validity of the patents under which the license was taken, that it would not make or sell during the period of the license any barbed fence wire other than that which it was licensed to make and sell, and that it would co-operate in properly maintaining the barbed-wire bus-

iness, and the patents under which the license was granted. By the terms of the license, the licensor reserved the right to cancel and annul the same for any failure of the licensee to comply with the provisions thereof. The bill further avers that complainant had at the time of granting the license issued similar licenses to other persons throughout the United States; that the complainant was itself a manufacturer of barbed wire; and that, in order to maintain its rights and secure the benefits to which it was entitled under its patents, it was necessary that all the covenants and agreements made by its several licenses should be faithfully kept; and that defendant had notice of such facts when it accepted the license in question. The bill also shows that since May, 1888, the defendant has willfully violated the provisions of the license by making and selling barbed fence wire such as is described in the license, and by failing and refusing to make the monthly reports called for, and by refusing to pay royalties. In view of the premises, complainant prays for a decree requiring the defendant to render an account of all wire made and sold since May 1, 1888; that it be required in future to strictly keep and perform the covenants contained in the license; and that in the mean time, and until the further order of the court, it may be enjoined from making and selling barbed fence wire of the kind described in the license.

*Lehmann & Park* and *Hitchcock, Madill & Finkelnburg,* for complainant.

*W. B. Homer,* for defendant.

THAYER, J., (*after stating the facts as above.*) On the case made by the bill, the complainant is not entitled to equitable relief. It cannot maintain a suit in equity, merely to have an account taken of the royalties due to it, and a decree for their payment, as it is now settled that courts of equity, even in patent cases, will not entertain bills merely to obtain an account of profits or damages realized or sustained by the infringement of letters patent. To authorize a decree for an accounting, either as to profits or damages, to which a complainant is entitled under the patent laws, the court must first acquire jurisdiction of the cause, on some well-defined equitable ground. A case does not become one of equitable cognizance merely because an accounting is prayed for, or because it is proper or even necessary to take an account, as courts of law are competent to deal with suits of that character. Though it is usual, in many equitable proceedings where the bill is sustained, to order an accounting, yet in most, if not all, cases where such relief is afforded it is regarded as relief that is incidental to the main purposes of the suit, and an order for an accounting is almost invariably granted in obedience to the well-known rule that a court of equity, when it acquires jurisdiction, should administer full and complete relief. *Root* v. *Railway Co.*, 105 U. S. 189, and cases cited; *Purifier Co.* v. *Wolf*, 28 Fed. Rep. 814; *Crandall* v. *Manufacturing Co.*, 24 Fed. Rep. 738. It is not claimed in the present case (nor could it be successfully claimed) that complainant is entitled to the injunctive relief prayed for, and hence that an account may be taken of the royalties that have accrued under the license, as an

incident of such injunctive relief. An injunction cannot be granted to restrain the defendant from manufacturing and selling barbed wire, because defendant is confessedly operating under a license granted to it by the plaintiff, which is as yet unrevoked. So long as the license remains in force, complainant is not entitled to an injunction to restrain the manufacture and sale of the patented article, but must content itself with such remedies as it has under the license. *Purifier Co.* v. *Wolf, supra; Densmore* v. *Tanite Co.*, 32 Fed. Rep. 544. While complainant's counsel impliedly concedes that an injunction as prayed for cannot be awarded, and therefore concedes that an accounting cannot be ordered as an incident to such equitable relief, yet it is strenuously urged that in the present case complainant has an independent right to an accounting in equity, and that such right grows out of the peculiar relations existing between the parties, under the provisions of the license. It is said that complainant is itself a manufacturer of barbed wire; that it needs the information which defendant covenanted to furnish by its monthly reports, both for the proper management of its own business as a manufacturer, and for the defense of its rights under its patents; and that, in view of this fact, it has a right to call for a discovery and an accounting, and to invoke the aid of a court of equity in that behalf. The answer to this contention is that the relation between complainant and defendant, so far as the bill shows, does not differ essentially from that existing between any licensor and licensee, where royalties are paid for the use of an invention. If complainant is entitled to a discovery and an accounting in equity, and to maintain a bill solely for that purpose, and entirely independent of other equitable considerations, no reason is perceived why any other licensor might not maintain a bill on the same pretense. The position taken is therefore untenable, and cannot be maintained consistently with the authorities above cited, holding that a bill in equity for an accounting merely is not the proper remedy to recover profits realized by an infringement of letters patent, or to recover royalties due under a license. Furthermore, under the practice which now prevails at law, under the provisions of section 724, Rev. St. U. S., the complainant may obtain as full information for the protection of its interests by a suit at law to recover the royalties in question as it could possibly obtain by a proceeding in chancery. There seems to be no occasion, therefore, for resorting to equity merely to obtain a discovery and an accounting. The equitable powers of the court cannot be called into requisition on the plea of necessity, because the authority of a court of law is ample, if an accounting and a decree for the payment of royalties is all the relief complainant is entitled to.

But it is further insisted that the bill may properly be entertained as a bill for specific performance. There are, however, insuperable objections to retaining it on that ground. No court, so far as I am advised, has ever undertaken to enforce the specific performance of covenants such as the license existing between the parties to this suit contains. For a breach of the main covenants contained in the license,—those, for instance,

whereby defendant binds itself to render monthly reports and to pay royalties,—the complainant can, as before shown, obtain adequate redress in a suit at law. Another covenant in the license—that whereby the defendant bound itself "to give its co-operation in maintaining the barbed-wire business, and the patents under which the license is granted"—is altogether too vague and indefinite to warrant any court in attempting to specifically enforce it by judicial order or decree. The license also calls for the performance of personal duties that are continuous during the existence of the license, and it seems to be the better opinion that it is inexpedient for courts of equity to attempt to enforce the specific performance of covenants of that nature. *Marble Co.* v. *Ripley,* 10 Wall. 358; *Port Clinton R. Co.* v. *Cleveland, etc., R. Co.,* 13 Ohio St., 544. At all events, this court does not feel inclined to undertake to supervise the performance of all the duties assumed by the defendant under the provisions of the license, and for the full term of the license, without some stronger assurance than the present bill affords that the complainant will suffer irreparable injury, if left to enforce its rights in a legal proceeding. And, lastly, it may be observed, as an additional reason for refusing specific performance, that the complainant has the power to revoke the license in question at any time, if the remedy at law for the enforcement of the covenants therein contained is in any respect, or for any cause, incomplete or inadequate. For the reasons given I conclude that the bill does not state a case for equitable relief of any sort, and the demurrer thereto is accordingly sustained.