UNITED MFG. & SERVICE CO. v. HOLWIN CORP.

No. 10258.

United States Court of Appeals Seventh Circuit.

April 3, 1951.

James R. McKnight, Robert C. Comstock, Chicago, Ill., for appellant.

Frank H. Marks, Chicago, Ill., Ira Milton Jones, Milwaukee, Wis. (Lederer, Livingston, Kahn & Adsit, Chicago, Ill., of counsel), for appellee.

Before MAJOR, Chief Judge, DUFFY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

The plaintiff filed action for a declaratory judgment which would adjudge that: (1) certain electric light sockets for refrigerators which plaintiff was manufacturing and selling did not infringe any claim of the letters patent owned by defendant; (2) that each of the claims of defendant's letters patent was invalid and void; and (3) that plaintiff have a judgment for damages, attorneys' fees and costs because of the unfair competition of defendant in charging to plaintiff's customers that plaintiff's socket infringed defendant's patent. Later plaintiff amended its complaint to include a charge of fraud in procuring the patent and in inducing plaintiff to enter into the license agreement. The amendment to the complaint prayed that the license agreement "be declared void *ab initio*" and for damages in the amount of all royalties paid by plaintiff and all expenses it had incurred in securing the license agreement and in designing and producing a socket outside the patent.

The defendant filed its answer to the complaint and also filed a counterclaim asking: (1) a decree holding that all sockets made by plaintiff after September 16, 1949, were made in accordance with the defendant's patent and are within the terms of the license agreement; (2) that plaintiff be ordered to pay to defendant, pursuant to the terms of the license agreement, royalties on all sockets manufactured and sold by plaintiff after September 16, 1949; (3) an injunction restraining plaintiff from representing to any one that defendant's patent is void or that plaintiff's sockets do not come within the terms of the defendant's patent; and (4) for a judgment for the damages suffered by defendant by reason of plaintiff's failure to pay royalties and by reason of plaintiff's false representations as to defendant's patent.

The counterclaim alleges the execution of the license agreement on June 16, 1949; that, pursuant to the license agreement, the plaintiff paid defendant $500.00 and royalty payments of 1¢ per socket for all sockets made and sold by plaintiff from April 12, 1949, to September 16, 1949; that plaintiff has refused to pay royalties on any sockets made and sold by it since September 16, 1949, although, since that date, it has made and sold, and will continue to make and sell, "sockets constructed in accordance with said patent and coming within the terms of said patent license agreement"; that said patent license agreement "is still in full force and effect and always has been and has never been revoked, cancelled or voided in any way." The counterclaim further alleged that plaintiff through its officers, agents and representatives has represented to defendant's customers that the sockets made and sold by plaintiff do

not infringe or come within the terms of defendant's patent; that such statements by plaintiff encourage others to infringe defendant's patent; and that "said statements are deliberately made by plaintiff with the intent to destroy defendant's patent and to appropriate the business of defendant's customers."

The trial court, on the motion of plaintiff, dismissed this counterclaim as failing to state a claim upon which relief could be granted, assigning as the reason therefor that the defendant impliedly repudiated the license and consequently cannot sue for royalties on the basis of the license agreement. The trial court based such "repudiation" of the license agreement on two letters the defendant had written, one to Sears, Roebuck & Co., Chicago, Illinois, and the other to Seeger Refrigerator Co., of Evansville, Indiana, the wholly owned subsidiary of Sears. Copies of these two letters were made a part of and attached as exhibits to plaintiff's complaint.

The license agreement here in question recited that the defendant was the sole and lawful owner of the patent in question on electric light sockets for refrigerator panels; that the plaintiff had manufactured and sold to Seeger Refrigerator Co. certain electric light sockets for refrigerator panels, which the defendant claimed constituted an infringement of said patent and that "whereas the parties are desirous of settling the controversy between them" the parties agreed that the defendant thereby granted to the plaintiff a non-exclusive, non-transferable license to make and sell to Seeger Refrigerator Co. electric light sockets constructed in accordance with the claims of the defendant's patent, and that the plaintiff would not make or sell electric light sockets made in accordance with the claims of the patent to any corporation, firm or individual other than Seeger Refrigerator Company. In said agreement the defendant reserved the right to make and sell such electric light sockets to Seeger Refrigerator Company and the right to license others to make, use and sell such electric light sockets for refrigerator panels.

■ In the license agreement the plaintiff expressly admitted that the defendant was the sole and lawful owner of the patent in question. If this license agreement was valid and was still in effect, the plaintiff could not deny the validity of the defendant's patent. However, the plaintiff contends that the license agreement was revoked and canceled by the conduct of the parties: by the repudiation of the agreement on the part of the defendant by writing the two letters charging infringement of the patent, and on the part of the plaintiff by filing this action, thereby accepting or agreeing to such repudiation.

Both parties admit that if the license agreement is still in effect the plaintiff is estopped to deny the validity of the patent. Both also agree that it is possible for the parties to revoke a license agreement without any formal contract or agreement for such revocation, and that such a revocation may be implied from the conduct of the parties. We are therefore confronted with a question of whether the conduct of the parties here was such that it constituted an implied revocation of the license agreement.

■ The letter written by defendant's attorneys to Seeger Refrigerator Co. explained that plaintiff had been granted a license by the defendant to make and sell to Seeger sockets made in accordance with defendant's patent. The letter stated that plaintiff had paid royalties, pursuant to the license, covering all sockets manufactured prior to September 16, 1949; that plaintiff had informed defendant it would pay no further royalties after that date because the sockets it was then manufacturing were outside the scope of defendant's patent; that in the opinion of defendant's attorneys all sockets made and shipped by plaintiff after September 16, 1949, were made in accordance with defendant's patent and were "infringements" thereof; that "they cannot be considered as manufactured within the license granted by our client because United has not paid, and has refused to pay, royalties thereon"; and that the attorneys expected that Seeger

would "promptly discontinue this infringement." The letter to Sears, Roebuck & Co. contained similar statements and threatened a suit "for patent infringement seeking an injunction and profits and damages arising from such infringement after the date of this letter," if Sears continued to sell refrigerators containing such sockets. The trial court held that, "By sending notices of infringement to Seeger and Sears, defendant impliedly repudiated the license and consequently cannot sue for royalties on the basis of the license agreement." However, it is clear that the unilateral action of one party to a patent license agreement cannot revoke the agreement. Hartell v. Tilgham, 99 U.S. 547, 556, 25 L.Ed. 357.

■ It is also clear that while the license agreement is still in effect the owner of the patent cannot sue for infringement. He is limited to the enforcement of his rights and remedies under the license agreement. Harshberger v. Tarrson et al., 7 Cir., 184 F.2d 628, 629. See also Mitchell v. Hawley, 16 Wall. 544, 21 L.Ed. 322.

■■ Even in the oral argument before this court counsel for the defendant seemed to think that a patent licensor could sue customers of the licensee for infringement where the licensee had not paid royalties pursuant to the license agreement. We think this is not a correct legal conclusion, but we do not think that we can consider the expression of such an erroneous legal conclusion an election to repudiate the license agreement when the defendant seems to have thought all along that it was electing to stand on the license agreement and was only attempting to enforce its rights under the terms of the agreement. Our courts generally take a strict view on attempted revocations or forfeitures of license agreements. The courts dislike forfeitures. See 2 Walker on Patents (Deller's Edition, 1937) § 390.

This court has held that the licensor cannot repudiate a license where the licensee has made machines which it did not consider to be under the license, and for that reason has refused to pay royalties. Carr v. Jaeger Machine Co., 7 Cir., 69 F.2d 434, 435. In Chadeloid Chemical Co. v. Johnson, 7 Cir., 203 F. 993, the license expressly provided that it could be terminated at the patentee's election in case of violation of any of the covenants of the agreement. However, the court refused to enjoin the licensee from further use of the patents upon his violation of the covenant to pay royalties. The court said that the violation of the covenants in the license was at most a matter of contract violation and in no way a trespass upon the reserved rights of the patentee; that such breaches were not made self-operative by the contract. In Comptograph Co. v. Burroughs Adding Mach. Co., 7 Cir., 183 F. 321, where a licensee filed in this court a brief in aid of a third party who was defending in an infringement suit brought by the licensor under the same patent, this court held that such action by the licensee was not such a repudiation as the patentee could accept, and thereby terminate the license.

■ We are of the opinion that the two letters to Seeger and to Sears cannot reasonably be regarded as an attempted repudiation of the license agreement but can only be considered as an attempt by defendant to collect the royalties due under the agreement. Since those two letters by the defendant cannot be considered as a repudiation of the license agreement by the defendant, there could be no acceptance of such a repudiation by the plaintiff by filing this action.

Plaintiff also questions the counterclaim on the theory that it is based on allegations of facts which are inconsistent with the allegations of fact in defendant's answer. The plaintiff finds the allegations of fact inconsistent only by assuming that in the answer the defendants pleaded facts showing the termination of the license agreement. Since we have held above that this assumption by plaintiff was unwarranted, there is no inconsistency in the facts pleaded in the answer and the counterclaim.

The order of the District Court dismissing the counterclaim is reversed and the case remanded for further proceedings not inconsistent with this opinion.