UNILECTRIC, Inc., by change of name from United Mfg. and Service Co., Plaintiff-Appellant,

v.

HOLWIN CORPORATION, Defendant-Appellee.

No. 11906.

United States Court of Appeals Seventh Circuit.

April 18, 1957.

Rehearing Denied May 16, 1957.

Ira Milton Jones, Milwaukee, Wis., Frank H. Marks, Chicago, Ill., Lederer, Livingston, Kahn & Adsit, Chicago, Ill., of counsel, for appellant.

James R. McKnight, Chicago, Ill., for appellee.

Before FINNEGAN and LINDLEY, Circuit Judges, and WHAM, District Judge.

WHAM, District Judge.

On February 1, 1949 United States Patent No. 2,460,636 for an electric light socket for refrigerator panels which is self-sealing upon installation was issued by the United States Patent Office to Charles M. Holloway, president of the defendant-appellee, Holwin Corporation, hereinafter referred to as "Holwin", to which corporation he assigned the patent. Plaintiff-appellant, United Mfg. and Service Co., now, by change of name, Unilectric, Inc., hereinafter referred to as "United", was a manufacturer of a self-sealing refrigerator light socket similar to the patented socket which Holwin claimed to be an infringement of the patented socket. To settle the controversy on July 20, 1949, United entered into a written, non-exclusive license agreement with Holwin by the terms of which United for a consideration of $500 paid to Holwin was given the right to manufacture and sell to a single customer, namely Seeger Refrigerator Co. of Evansville, Indiana, self-sealing electric light sockets within the scope of the Holloway patent on a royalty basis of one cent per socket. The agreement recited that Holwin was the sole and lawful owner of the patent in question. Holwin reserved the right to make, use and sell and to license others to make, use and sell electric light sockets made in accordance with the patent. The license agreement further provided that the royalties should be paid quarterly and that plaintiff should keep books on the manufacture and sale of such sockets and make the books available to defendant and its representatives.

Under said license agreement plaintiff manufacturered, sold to Seeger Refrigerator Co., and paid royalties to defendant on a large number of such self-sealing light sockets, admittedly made in accordance with the patent, up to and including September 16, 1949. In the meantime it devised a self-sealing socket which it referred to as its "contemporary socket" and which it contended was, as constructed, outside the patent and the license agreement. On September 16, 1949 United ceased making and selling the socket it had manufactured and sold prior to that date and thereafter exclusively manufactured and sold its so-called contemporary socket to Seeger Refrigerator Co. United refused to pay royalties upon the contemporary sockets manufactured and sold to Seeger Refrigerator Co. subsequent to September 16, 1949, claiming that such sockets were not made in accordance with the patent and were not covered by the license agreement.

Thereupon Holwin protested to plaintiff and wrote plaintiff's customer, Seeger Refrigerator Co., and Seeger's customer, Sears Roebuck & Co., informing each of the license agreement with United, that royalties had not been paid by United on the sockets manufactured and sold after September 16, that such sockets infringed the Holloway patent, and expressed the hope that such infringements would cease. To Sears, Roebuck & Co. the letter by Holwin's counsel stated, "Otherwise, we shall be forced to file suit for patent infringement seeking an injunction and profits and damages arising from such infringement after the date of this letter."

Plaintiff, on December 16, 1949, commenced this action, praying for a declaratory judgment that its contemporary sockets do not infringe but are outside the scope of the Holloway patent, that each and every claim of the patent is invalid and void, and seeking damages, costs, expenses and attorney's fee. Before answer filed plaintiff amended its complaint alleging further that defend-

ant Holwin had procured the license agreement from plaintiff by fraud in that Holwin then knew that the patent was invalid and void, that Holloway had procured the patent from the United States Patent Office by misrepresentation and fraud in that he knew he was not the inventor of the subject matter of the patent and that the socket claimed had been invented by a person other than himself and had been in public use and on sale in the United States for more than one year prior to the date of Holloway's application for the patent; also that the affidavit of S. R. Loughman, secretary-treasurer of Holwin, filed in the Patent Office to make special the prosecution of the application for Letters Patent contained false and misleading statements which were willfully and deliberately contrived and intended to deceive the Commissioner of Patents into believing that Holwin was not then in production of sockets of the type covered by the application which was not true. Plaintiff prayed for a decree holding the license agreement void *ab initio* by reason of fraud and for recovery of the royalties paid thereunder with damages for cost of designing and tooling for production of its contemporary sockets.

Defendant in its answer to the amended complaint denied that plaintiff's contemporary sockets were outside the scope of the Holloway patent and of the license agreement; denied that the claims of the patent were invalid and void and denied all allegations of fraud on its part before the Patent Office and in the procurement of the license agreement. With its answer Holwin filed its counterclaim for judgment under the license agreement for unpaid royalties on all sockets manufactured by United subsequent to September 16, 1949 to date of judgment and for mandatory order of injunction requiring payment of such royalties in the future; also for damages, accounting and attorney's fees.

Plaintiff moved to dismiss the counterclaim on the ground that Holwin had repudiated and terminated the license agreement by the above-mentioned letters to plaintiff's customer, Seeger Refrigerator Co., and to Sears, Roebuck & Co. charging infringement and threatening suit for infringement and damages. The district court granted the motion, dismissed the counterclaim and defendant Holwin appealed. After hearing, this court reversed the order dismissing the counterclaim and, in effect, reinstated the counterclaim holding that the license agreement was not terminated by said letters from Holwin to Seeger and Sears but continued to be valid and in effect; also that the plaintiff as a licensee could not lawfully be heard to deny the validity of the patent. United Mfg. & Service Co. v. Holwin Corp., 7 Cir., 187 F.2d 902. See also Automatic Radio Mfg. Co. v. Hazeltine Research, Inc., 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312; United States v. Harvey Steel Co., 196 U.S. 310, 25 S.Ct. 240, 49 L.Ed. 492.

Plaintiff thereupon filed its reply to the counterclaim admitting it had paid no royalties under the license agreement on sockets manufactured after September 16, 1949 but alleging that since that date it had manufactured and sold only its contemporary socket which did not infringe and had made no sockets which did infringe the patent or fall within the scope of the license agreement; also alleging that the license agreement was void *ab initio* by reason of fraud used in the procurement of the patent and fraud in the inducement of the license agreement as alleged in the amendment to the complaint. At the trial counsel for defendant announced that defendant would rely on Claim 3 only of the patent.

The ultimate issues before the district court were: (1) Did plaintiff's contemporary sockets which it manufactured and sold after September 16, 1949 fall within the license agreement by infringing Claim 3 of the patent? (2) Was the patent void *ab initio* by reason of fraud before the Patent Office in its procurement, and, if so, was the license agreement likewise void and unenforceable by reason of such fraud? (3) What should be the scope of the order to be entered?

The district court had before it the opinion of the United States Court of Appeals for the Seventh Circuit to the effect that the license agreement continued in effect after Holwin's letters to Seeger and Sears; also stating the principles that as long as the license agreement continues in effect the licensee is estopped to deny the validity of the patent and the licensor cannot sue for infringement but is limited to enforcement of his rights and remedies under the license agreement. United Mfg. & Service Co. v. Holwin Corp., supra, citing Harshberger v. Tarrson, 7 Cir., 184 F.2d 628, 629.

In the trial the district court attempted to hold plaintiff to the rule in producing its evidence that as a licensee it could not attack the validity of the patent. The court admitted evidence, however, offered to show that the claims of the patent were limited in scope by prior art and by the file wrapper history of the patent. The district court refused to permit certain discovery procedure and refused to admit certain depositions and exhibits offered by plaintiff for the stated purpose of showing fraud in the procurement of the patent by showing the state of prior art known to defendant for more than a year prior to the date of the application, holding that such evidence constituted nothing more than a further attack upon the validity of the patent and for that reason was improper and inadmissible.

At the conclusion of the trial the court sustained all objections to evidence not theretofore ruled upon, dismissed the complaint as amended and awarded Holwin a judgment on its counterclaim for unpaid royalties on the contemporary socket manufactured by plaintiff after September 16, 1949, plus a mandatory injunction order for payment of future royalties; referred the cause to a special master in chancery for an accounting and determination of the amount of the judgment and interest and the damages suffered by defendant by reason of plaintiff's non-payment of royalties; and awarded costs and disbursements.

Plaintiff appealed from the judgment and filed a supersedeas bond in the agreed amount of $25,000.

Plaintiff-appellant contends that the district court erred: (1) In enjoining plaintiff against future breaches of the provisions of the license agreement and in awarding special damages and an accounting. (2) In failing to find that plaintiff's contemporary socket is outside of the scope of Claim 3 of the Holloway patent and the coverage of the license agreement. (3) In failing to find that defendant is estopped by the file history of the Holloway patent from asserting for its claims a scope broad enough to read on plaintiff's contemporary socket. (4) In denying the plaintiff the right to prosecute its cause of action for avoidance of the license agreement by showing fraud in the procurement of the patent. (5) In granting attorney's fees to defendant.

More briefly, the defendant-appellee states the contested issues on this appeal as follows: (1) Does appellant's socket in evidence come within the terms of Claim 3 of appellee's patent 2,460,636 and thus within the license agreement between the parties? (2) May appellant, a licensee, attack the validity of appellee's patent on which it is licensed under a claim of fraud?

Considering first No. 1 of appellant's specifications of error we have concluded that the district court erred in awarding defendant mandatory injunction order requiring the licensee to pay subsequent and future royalties and otherwise comply with the terms of the license after the date of the judgment. The suit for royalties under the counterclaim is a suit on a contract. The licensor has an adequate remedy at law for the recovery of any royalties that are due and unpaid and will have such remedy for all royalties that may subsequently become due under the contract. This is not an infringement suit with right to seek an injunction and accounting. Since defendant has an adequate remedy at law, it is not entitled to equitable re-

lief. Thomas v. Council Bluffs Canning Co., 8 Cir., 92 F. 422; Washburn & Moen Mfg. Co. v. Freeman Wire Co., C.C., 41 F. 410; Babbot v. Tewksbury, C.C., 46 F. 86; Mayflower Industries v. Thor Corporation, 3 Cir., 182 F.2d 800; Rule 53(b) and Rule 65(d), Fed. Rules Civ.Proc., 28 U.S.C.A.; Clark v. Lindemann & Hoverson Co., 7 Cir., 88 F.2d 59.

■ United's specification of error No. 2 and appellee's stated issue No. 1 present this question: "Did the district court err in failing to find that plaintiff's contemporary socket is outside the scope of the Holloway patent and the license agreement?" We leave for later consideration United's contention that the file history of the patent estops defendant from rightfully claiming that plaintiff's contemporary sockets read on Claim 3 of the patent. Claim No. 3 of the patent, being the only claim here in issue is set forth in the margin.[1]

As will be seen, Claim 3 provides for an electric light socket for refrigerator panels having a flexible housing and a groove that can easily be fitted into a non-circular opening in the panel or removed therefrom, without need of a tool, and by means of a continuous flange with plurality of flanges oppositely disposed and spaced from the continuous flange forming the groove and holding the socket in position in the non-circular opening and forming a moisture proof seal.

The socket manufactured by United under the license from Holwin had a continuous flange opposed by a plurality of flanges as described in Claim 3 of the patent and was admittedly infringing. United manufactured and sold its said infringing socket and paid royalties thereon under the license until September 16, 1949 when it ceased manufacturing the admittedly infringing socket and began manufacturing and selling its contemporary socket which it claimed did not infringe and refused to pay further royalties.

The difference between the patented socket and plaintiff's contemporary socket is that the latter has two continuous, uninterrupted flanges spaced apart, oppositely disposed and forming a groove which flanges grip the edges of the non-circular opening in the refrigerator panel forming a moisture proof seal instead of one continuous flange with oppositely disposed plurality of flanges performing the same function.

The credible testimony of expert witnesses and a study of the two sockets show that the simple substitution in the contemporary socket of one continuous flange oppositely disposed to the continuous flange as shown in the patent, in lieu of a plurality of oppositely disposed flanges as called for in Claim 3, falls clearly within the scope of Claim 3 under the doctrine of equivalents and fails to avoid infringement of Claim 3. Mid-Continent Inv. Co. v. Mercoid Corporation, 7 Cir., 133 F.2d 803, 807; Sutherland Paper Co. v. Auburn Carton Corporation, 7 Cir., 118 F.2d 862, 864. The second continuous flange oppositely disposed to the first continuous flange performs precisely the same function in the same way as the oppositely disposed plu-

1. "An electric light socket for refrigerator panels comprising an outer flexible housing having a hollow interior with a front opening adapted to receive an electric light bulb, means for connecting said socket to a suitable source of electrical supply, a continuous flange extending around the outside of said housing to form a non-circular shape, a plurality of shorter flanges extending partially around the side of said housing and spaced slightly from said continuous flange on a corresponding line, said socket adapted to be installed without the use of tools in a single non-circular opening in a refrigerator panel corresponding in shape to the shape of said housing between said flanges, so that said flanges grip the edges of the opening and hold the edges in the space between said continuous flange and said shorter flanges, so that said socket may not be accidentally turned and said continuous flange contacts the face of the refrigerator panel around the entire circumference of the opening to provide a moisture proof seal around said opening."

rality of flanges in the socket of the Holloway patent. There is no difference in their operation or in the results they accomplish. The district court found [143 F.Supp. 494]: "Plaintiff's contemporary socket is the equivalent in construction, function, operation and result of plaintiff's socket * * *." This finding is adequately supported by the evidence and the district court did not err in finding, passing for the moment the effect, if any, of prior art, that the contemporary socket is within the scope of the Holloway patent.

The court admitted evidence of the state of the prior art at the time the application for the patent was filed by Holloway to determine whether the scope of the patent was limited thereby in any way pertinent to this lawsuit. Upon consideration of this evidence the court made its finding as follows: "During the trial of this action plaintiff introduced evidence of prior art which was considered solely on the question of limiting the claims of the defendant's patent aforesaid. Consideration of the prior art did not indicate that defendant's claims were so limited as to exclude the contemporary socket of plaintiff."

Upon examination of the same evidence we are of opinion that the district court was correct in this finding. The disclosures of the prior art failed to anticipate the practical and successful Holloway socket covered by the patent which provides a flexible body with a groove and flanges that may easily be inserted or removed from the non-circular opening in the panel without tools and when inserted cannot be turned in the panel and at the same time forms a moisture proof seal. Its commercial success as shown by the evidence and the facts that United's sockets are imitative are excellent proofs of its useful advance in the art and its patentable novelty. Ric-Wil Co. v. E. B. Kaiser Co., 7 Cir., 179 F.2d 401, 404; Sandy MacGregor Co. v. Vaco Grip Co., 6 Cir., 2 F.2d 655, 656; Charles Peckat Mfg. Co. v. Jacobs, 7 Cir., 178 F.2d 794, 801.

An examination of cancelled Claim 4 shows that it was general in character and from all that appears it was cancelled voluntarily for the reason that it added nothing of value to the other claims. We see nothing in the file history of the Holloway patent that either compelled the cancellation of Claim 4 to avoid prior art or estops defendant from claiming its right to a reasonable range of equivalents under Claim 3. The applicable rule is stated in 69 C.J.S., Patents, § 212, p. 725, as follows: "The voluntary cancellation of a claim in an application for a patent does not create an estoppel, affecting the construction or scope of other claims as allowed." The district court adopted as a conclusion of law: "There is no file wrapper estoppel limiting the scope of Claim No. 3 of defendant's patent aforesaid." We agree with the conclusion of the district court.

The next issue is whether a licensee may resist a suit for royalties under a license agreement on the ground that the patent was void ab initio and unenforceable by reason of fraud in the procurement of the patent and, if so, is fraud in the procurement of the patent shown either by the evidence admitted or that excluded by the trial court. Was United deprived of a right to show fraud by the court's denial of discovery?

Assuming for the purpose of this case, on the authority of Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997, 84 L.Ed. 1250, though in that case there was clear and deliberate fraud upon the court as well as upon the Patent Office, that such a defense may be open to a licensee if willful fraud in procurement be clearly proven, we have examined the record to ascertain whether the evidence admitted by the trial court or that tendered by the plaintiff but excluded was such as to show fraud in the procurement of the patent. Such examination discloses nothing in the admitted evidence that tends to show fraud in procurement. The offer of proof rejected by the trial court (consisting of the excluded Warren depositions and

offer of proof) had to do with the state of the prior art allegedly known to Holloway before he filed the application for the patent and to S. R. Loughman who filed the affidavit to make the application special. The excluded evidence might well have been considered admissible had invalidity been in issue. But it was not and for that reason the depositions were inadmissible unless they also showed fraud in procurement. Automatic Radio Mfg. Co. v. Hazeltine Research Inc., supra; United Mfg. & Service Co. v. Holwin Corp., supra.

The above conclusion appellant does not dispute but it earnestly contends that the depositions and other excluded evidence do show fraud in the procurement of the patent and for that reason the trial court erred by excluding them from the evidence. With this contention we do not agree. The depositions relate to several socket devices some of which are of long years standing, experimental in nature and never put into production. Those shown to have been put into production of which there is evidence that Holloway had knowledge before he filed his application for the patent in suit or of which there is evidence that S. R. Loughman, secretary-treasurer of Holwin, had knowledge before he filed the affidavit in support of the petition to make special the Holloway application, are not sufficiently similar to the patented socket to make failure to disclose them to the Patent Office amount to fraud or to have the appearance of fraud. We conclude that the excluded depositions, the offer of proof and efforts toward discovery failed to show fraud in the procurement of the patent on the part of either Holloway or Loughman. Had the district court admitted the depositions and all other excluded evidence the proof would have been insufficient, as a matter of law, to sustain a finding that fraud was exercised by either Holloway or Loughman in the procurement of the patent. All such proof had the appearance of attacking the validity of the patent and this was not permissible. It fails to appear, ex-

cept as a matter of argument, that the affidavit of Loughman had anything to do with the actual procurement of the patent. It went only to the time when the application would be considered.

Plaintiff-appellant, in its brief says: "Happily, decisions on the question here involved (effect of fraud in procurement on rights of licensee) are rare. * * *" That is quite true and the decisions appellant cites are distinguishable by their facts from the case before the court. Illustrative is the Hazel-Atlas case upon which appellant so strongly relies. That case invoved a false affidavit obtained by bribery clearly proven which affected both the procurement of the patent and also the judgment of the United States Court of Appeals before its falseness was discovered. In Katzinger Co. v. Chicago Metallic Mfg. Co., 329 U.S. 394, 67 S.Ct. 416, 91 L.Ed. 374, the license agreement obliged the licensee to sell at prices fixed by the licensor which provision was illegal and unenforceable unless within the protection of a lawful patent. In such situation the case turned on the proof of fraud in the procurement of the patent and such fraud was clearly proven. See also MacGregor v. Westinghouse Electric & Mfg. Co., 329 U.S. 402, 67 S.Ct. 421, 424, 91 L.Ed. 380.

Appellant's defense to Holwin's counterclaim for royalties that Holwin cannot succeed because it comes into court with unclean hands by reason of misrepresentation and fraud before the Patent Office must fail for want of proof as indicated by what has already been said in this opinion.

■ Counsel for appellant protests vigorously against and seeks reversal of the order entered by the district court assessing attorney's fees and reasonable expenses against appellant in connection with appellant's determined and repeated efforts under the rules for discovery. Appellant says his insistent efforts were for the purpose of securing evidence to prove fraud in the procurement of the patent. Counsel for the appellee insist-

ed that the discovery was directed toward showing the invalidity of the patent which a licensee was not permitted to show. The court said: "The court finds that plaintiff's request for admissions and the questions asked on adverse examination are substantially the same as the interrogatories which this Court previously held need not be answered on the ground that they constituted an attack upon the validity of defendant's patent, in violation of the opinion and mandate of the Court of Appeals herein, and the Court therefore finds that plaintiff's motion to compel answers to such questions should be denied and that said motion was made without substantial justification, * * *." The court then sustained defendant's objections to plaintiff's request for admissions and denied plaintiff's motion to compel answers to questions asked on adverse examination and ordered the plaintiff and its attorney to pay to the defendant the amount of defendant's reasonable expenses incurred in opposing said motion, including reasonable attorney's fees, the amount thereof to be determined by agreement of the parties or by the court. The record further shows that the amount of such reasonable expenses and attorney's fees was agreed upon between the parties and paid by the plaintiff. In appellant's brief relating to this phase of the case appears the language: "In a final attempt to obtain evidence on the fraud issue and at the same time frankly reveal its hand to defendant, plaintiff filed a series of requests for admissions." It would appear from this language and from all that appears in the record that plaintiff sought to procure the evidence of fraud more or less by indirection so as not to "reveal its hand" and that the court may have had little or no opportunity by guidance of counsel to realize that the evidence was offered for the purpose of proving fraud rather than invalidity. As indi-

cated heretofore in this opinion, the evidence which was excluded appeared to bear much more strongly on the invalidity of the patent than it did on any possible fraud in the procurement of the patent. Without clear understanding of counsel's purpose and position the court undoubtedly had reason to be perplexed by the insistent conduct of counsel in the discovery proceedings contrary to the court's repeated rulings and to feel that the imposition of attorney's fees and expenses was justified and necessary in order to uphold the authority and dignity of the court. We find that under the circumstances of the case this action of the court was not reversible error.

From the foregoing we conclude that the district court did not err in dismissing plaintiff-appellant's complaint as amended and did not err in finding for the defendant-appellee on its counterclaim and in awarding judgment to Holwin with interest and costs.

In those respects the judgment of the district court is affirmed.

In so far as the district court granted Holwin equitable relief including mandatory injunction against United for payments of future royalties and compliance with the provisions of the license agreement subsequent to the date of the judgment it was in error and must be reversed.

There seems at this time to be no need for a special master or an accounting since finding the amount of royalties due with interest seems to present but a simple factual question. Should difficulty arise and an accounting by a master later appear to be necessary such order may become proper.

The case is affirmed in part and reversed in part as indicated above and remanded to the district court for further proceedings not inconsistent with this opinion.