Jo. C. CALHOUN, Jr., and Esther C. Young, Executors of the Estate of Niels A. Christensen (Deceased)

v.

**The UNITED STATES.**

No. 432–55.

United States Court of Claims.

Dec. 11, 1964.

Albert R. Teare, Cleveland, Ohio, for plaintiffs.

Henry Van Arsdale, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

PER CURIAM:

This case was referred to Donald E. Lane, a trial commissioner of this court who, under the order of reference, submitted his findings of fact and recommended conclusion of law in a report filed on July 22, 1963. Exceptions to the commissioner's report were filed by the defendant, briefs were filed by the parties and the case was submitted to the court on oral argument of counsel. Since the court is in agreement with the opinion and recommendation of the commissioner, it hereby adopts the same as the basis for its judgment in this case as hereinafter set forth. Therefore, the court concludes that claim 5 of United States Letters Patent No. 2,180,795 is valid, that the invention covered by said patent claim was used by defendant without authorization of the patent owner, and that plaintiffs are entitled to recover reasonable and entire compensation for such unauthorized use. Judgment is entered for plaintiffs to this effect with the amount of recovery to be determined pursuant to Rule 47(c) (2).

OPINION OF COMMISSIONER

This is a patent suit under the provisions of 28 U.S.C. § 1498, for the unau-

thorized use and manufacture by and for the United States of a patented invention. The subject matter of this case concerns a packing construction disclosed in United States Letters Patent 2,180,-795, granted to Niels A. Christensen on November 21, 1939. Said Niels A. Christensen was at the time of his death in 1952 a citizen of the United States and the sole owner of the legal title to said patent. Plaintiffs, Jo. C. Calhoun and Esther C. Young, are citizens of the United States and are the duly appointed executors of the estate of said Niels A. Christensen.

The patent disclosure and the patent claim in suit are described in the accompanying findings of fact. The several issues of law involved are discussed in the following comments.

The invention of the Christensen patent appears, at first impression, to be of a simple nature involving only the placing of an O-ring seal in a reciprocating piston and cylinder combination. As such, this first impression would lead one to believe that this invention must have been previously suggested in the art, or at least have been such as would be obvious to one having ordinary skill in the art. Upon closer scrutiny, however, it becomes apparent that the Christensen disclosure solves a perplexing problem and makes a significant contribution to the piston and cylinder sealing art. The Christensen disclosure provides that the depth of the groove in which the O-ring is mounted must be such as to compress the O-ring into a somewhat ellipsoidal shape when the cylinder and the piston are assembled. The width of the groove must also be greater than the diameter of the cross-section of the O-ring but less than twice that diameter. By these requirements Christensen provided a sealing O-ring which sealed the assembled piston and cylinder combination during the reciprocal movement of the piston, and which retained its effectiveness for long periods. This last-mentioned characteristic resulted from the width of the groove being great enough to allow the O-ring to be slightly knead-ed or worked during the strokes of the piston. If the width of the groove were restricted to the same size as the diameter of the cross-section of the O-ring, the O-ring would have been confined against any working or kneading and would have a resulting shorter life as an effective seal. Prior to Christensen's disclosure, it had been found that when O-rings were placed in grooves having large widths the ring would roll and twist, resulting in reduced life of the ring and in leakage. By limiting the width of the groove to less than twice the diameter of the cross-section of the O-ring, Christensen controlled the amount of roll of the O-ring and eliminated the twisting problem while at the same time retaining the advantages of the slight movement of the O-ring within the groove. Prior to Christensen's disclosure, the construction usually employed in piston packing for sealing hydraulic fluids was of the compression seal type using a gland nut which could be tightened to compress a packing into sealing engagement with the moving parts. This construction caused a relatively high degree of friction which resulted in low efficiency due to the objectionable amount of power required to overcome the friction. In addition; this construction required the added weight of adapters and adjustment nuts, and required occasional manual disassembly of the cylinder and adjustment of the compression on the packing to maintain the proper sealing.

When Christensen disclosed his invention to the defendant, it was immediately subjected to tests and was adopted to supersede the old style of packing. In addition, the invention of the patent in suit went into widespread use in private industry. Between 1946 and 1956 the patentee, and his successors in interest, received royalties from industrial users on 261,938,168 units. The defendant took a license under the patent in suit in 1942 for $75,000. This license was terminated in 1952. The defendant has continued to use the invention, and admits that if claim 5 of the patent is valid, it is infringed by defendant's continued use.

The defendant alleges that the Christensen patent is invalid in view of one or more of some 16 patents which are described in detail in the accompanying findings of fact.* In general, these patents show various types of packings and various uses for O-rings. None of the cited patents teach a reciprocating piston and cylinder combination utilizing a seal comprised of an O-ring mounted in a groove which is wider than the cross-sectional diameter of the O-ring but narrower than twice that diameter. The defendant alleges, however, that it does not require invention for one to select parts from certain of the cited patents and to combine them with selected parts of certain of the other cited patents to produce a packing like that of Christensen. This allegation is based on 35 U.S.C. § 103, which reads in part as follows:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. * * "

Thus it is defendant's position that the differences between certain of the cited patents and the Christensen invention are such that would be obvious to one having ordinary skill in the art in view of the structures of certain of the other cited patents. This position is not supported by the facts. Assuming that by combining selected parts of the various cited patents one could construct a packing construction like that of the Christensen patent, there is still no teaching in the art or the cited patents that such a packing would provide an effective seal for a reciprocating piston and cylinder combination. The evidence indicates that this teaching was not the type which would have been obvious to one having ordinary skill in the art. Indeed it was thought, by those skilled in the reciprocating piston and cylinder art at the time of Christensen's invention, that an O-ring which was not compressed by a gland nut or the like would twist and leak if mounted in a groove having a width larger than the cross-sectional diameter of the O-ring. That the Christensen teaching was not considered obvious at the time of the invention is further supported by the fact that both the defendant and the commercial industry quickly adopted the Christensen invention and were willing to pay substantial royalties for the privilege of using it, and by the fact that the defendant admits it is imitating the invention to such an extent that it has no defense to the charge of infringement if the patent is valid and not misused. See Kurtz v. Belle Hat Lining Co., 280 F. 277 (2d Cir. 1922), Otto v. Koppers Co., Inc., 246 F.2d 789 (4th Cir. 1957); Unilectric, Inc. v. Holwin Corp., 243 F.2d 393 (7th Cir. 1957).

* UNITED STATES PATENTS

| Patentee | Patent No. | Issue date |
|---|---|---|
| Gibson | 80,066 | July 21, 1868 |
| Allison | 83,899 | Nov. 10, 1868 |
| Creuzbaur | 88,371 | Mar. 30, 1869 |
| Morley | 137,559 | Apr. 8, 1873 |
| Horton, et al | 207,871 | Sept. 10, 1878 |
| Frager, et al | 391,956 | Oct. 30, 1888 |
| Campbell | 1,653,985 | Dec. 27, 1927 |
| Bell | 1,739,537 | Dec. 17, 1929 |
| Durdin | 1,859,436 | May 24, 1932 |
| Rasmussen | 1,861,755 | June 7, 1932 |

BRITISH PATENTS

| Patentee | Patent No. | Issue date |
|---|---|---|
| Whieldon, et al | 433 | Feb. 14, 1870 |
| Robertson | 10,716 | Oct. 14, 1899 |
| Woodcock | 12,253 | Aug. 22, 1848 |
| Hardy | 20,584 | Jan. 5, 1911 |
| Parker | 158,709 | Feb. 14, 1921 |
| Munro | 213,142 | Mar. 27, 1924 |

█ The defendant has previously taken a license under the patent which it now contends is invalid. In addition, the District Court for the Northern District of Ohio, Eastern Division, has held, in a separate suit, that the Christensen patent is valid over prior art similar to that cited in the case at bar. While neither of these factors is controlling as to the issue of validity, they both serve to strengthen the presumption of validity which normally attaches to an issued patent. Dueber Watch-Case Mfg. Co. v. Robbins, 75 F. 17 (6th Cir. 1896), and Georgia-Pacific Corp. v. United States Plywood Corp., 258 F.2d 124 (2nd Cir. 1958).

The invention of the Christensen patent is not anticipated by the cited patents either alone or in combination, and therefore the Christensen patent is found to be valid.

█ The defendant alleges that by granting licenses to the manufacturers of the unpatented O-rings, the patent owners attempted to use the patent to induce purchasers of the unpatented packings to purchase them from their licensees and thus to restrain competition in the unpatented packings. Defendant further alleges that the patent owners attempted to extend the patent monopoly beyond is lawful boundaries, and that such conduct constitutes *misuse* of the patent. The evidence does not sustain these allegations. The only evidence which the defendant has offered in support of its allegations of misuse are two agreements between Niels A. Christensen and Linear Incorporated. The first agreement is dated January 11, 1946, and the second agreement, which is a supplemental agreement to the first agreement, is dated January 31, 1950. Pertinent portions of these agreements are set forth in detail in finding 23 and need not be reproduced here. In effect, these agreements provided the manufacturer of O-rings was licensed to make and sell O-rings for use in the patented construction, and the purchaser from the licensed manufacturer was licensed to use the O-ring in accordance with the patent.

In return, the licensor was to receive a royalty of one-fourth of a cent for each packing construction used. The supplemental agreement more clearly spelled out that the ultimate purchaser from the licensed manfacturer was to have a license to use the O-ring in the patented packing construction and that the licensed manufacturer was, in effect, collecting the ¼-cent royalty from the purchaser as agent of the licensor. A fair reading of the original agreement implies that these supplemental provisions were within the intent of the original provisions. Thus, the agreement as supplemented was substantially the same as the original agreement, and there is no need to consider the two agreements separately. The plaintiffs have submitted two documents showing that the patent in suit was placed on the Register of Patents Available for Licensing, along with an acceptable license form, in December of 1947, and that the patent in suit was advertised to the public for licensing in the Official Gazette of the Patent Office in March of 1948. By offering no evidence other than the two agreements, defendant has rested its case on the proposition that these license agreements in and of themselves constitute patent misuse. These agreements do not establish that there has been misuse. There has been no showing that the patent monopoly has been expanded or used to restrain trade. The mere fact that patent royalties are based on the price of an unpatented material does not in and of itself constitute patent misuse. See Hall Laboratories, Inc. v. Springs Cotton Mills, Inc., 112 F.Supp. 29 (W.D. S.C.1953), affirmed 208 F.2d 500 (4th Cir. 1953), and Binks Mfg. Co. v. Ransburg Electro-Coating Corp., 122 U.S.P.Q. 74, modified on other grounds, 281 F.2d 252 (7th Cir. 1960). Further, the fact that a license is given to use a patented device with the purchase of an unpatented device is not of itself patent misuse. See Sola Electric Co. v. General Electric, 146 F.Supp. 625 (N.D.Ill.1956). This is not a situation where it has been shown that there has been a refusal to license

unless purchaser buys the unpatented material, see Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 143 F. Supp. 429 (S.D.N.Y.1956), affirmed 247 F.2d 343 (2d Cir.1957), or that the rates charged for the license without purchasing the unpatented material are such as to create two classes of customers, one favored over the other in the purchase of unpatented material as in Urquhart v. United States, 109 F.Supp. 409, 124 Ct. Cl. 441 (1953). The Urquhart case is particularly pertinent. In that case the patents covered a method and apparatus for producing a fire-extinguishing foam. The patent owners did not practice the invention themselves but licensed various manufacturers of unpatented foam-forming material. These licenses provided, in part, that purchasers of the unpatented material from the licensed manufacturers acquired a license to use the unpatented material in practicing the patented inventions. The patent owners also had a second form of license which was to be used to grant licenses directly to the consumers. The royalty rate in this second form of license was greater than in the first form used for the manufacturing companies. This court held that the Urquhart patent licensing policy constituted misuse of the patents, explaining that anyone operating under a direct consumer license and purchasing the unpatented material from other sources would be required to pay a higher royalty than one who acquired a license by purchasing this material from an Urquhart-licensed manufacturer. The court went on to point out that by channeling trade in unpatented materials through their appointed manufacturer, the patent owners had enlarged the monopoly of the patents beyond their legal scope. The case at bar is clearly distinguishable from the Urquhart case, in that both the consumer license and the manufacturer license specify the same license rate. The consumer who desires to purchase the unpatented O-ring from an independent source and take a direct license may do so and still pay the same royalty that he would be required to pay through the licensed manufacturer. Thus the licensing policy used with the Christensen patent does not have the effect of controlling trade in the unpatented O-rings.

The licensing policy of the owners of the Christensen patent was within the scope of the patent grant and served proper business purposes. It relieved the patent owners from having to collect royalties from the users who purchased O-rings from the licensed manufacturers and at the same time allowed the licensed manufacturers to induce prospective purchasers to use the O-rings in the Christensen device, without subjecting themselves to liability as contributory infringers. In Calhoun v. State Chemical Mfg. Co., 153 F.Supp. 293 (N.D.Ohio, 1957) involving the same patent and licenses here in suit, the District Court for the Northern District of Ohio, Eastern Division, in finding no misuse, said at page 302—

* * * * * *

" * * * On the contrary, the fair implications of the evidence reflect an arrangement between the licensor and licensees by the terms of which the licensees were granted authority to actively induce their customers to use the invention. Under the express terms of the license agreements the licensees were appointed agents of the licensor to collect royalties from those who purchased O-rings for use in the patented combination. Provision was also made in these agreements for a license from the patentee directly to the purchasers of O-rings, authorizing the latter to use the invention. By virtue of these agreements the patent owner was able to collect substantial royalties from many users of the patented combination, and the licensees were authorized to perform acts which, except for the consent of the licensor, would have subjected them to liability for contributory infringement under Par. (b) of Section 271 [of 35 U.S.C.]. It is unnecessary to deter-

mine whether the licensees did in fact actively induce their customers to use the invention. It is enough to say that it has not been shown that the plaintiffs misused the patent by granting the licenses in question."

It is recommended that the court find that Christensen patent No. 2,180,795 is valid, that claim 5 thereof has been infringed by defendant without authorization of the patent owners, and that the patent owners' right to compensation has not been barred by patent misuse.