The UNITED STATES, Petitioner,

v.

James L. WATSON, Judge, United States Customs Court, Respondent;

Michelin Tire Corporation, Respondent-Party-In-Interest.

Appeal No. 79–17.

United States Court of Customs and Patent Appeals.

July 26, 1979.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Joseph I. Liebman, Sidney N. Weiss, New York City, for the United States.

Paul Windels, Jr., John Y. Taggart, New York City, attorneys of record, for appellee; Windels, Marx, Davies & Ives, New York City, of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Associate Judges, and LUMBARD,* Circuit Judge.

MARKEY, Chief Judge.

The importer, Michelin Tire Corporation (Michelin) challenged a Treasury Department decision to assess countervailing duties against X-radial steel belted tires manufactured by Michelin Tire Manufacturing Company of Canada, Ltd. (Michelin of Canada).

The Government here seeks writs of mandamus and prohibition, (1) requiring the Customs Court to limit its review of the decision to the administrative record and (2) prohibiting the conduct of a trial *de novo*.

---

* The Honorable J. Edward Lumbard, Senior Circuit Judge, U. S. Court of Appeals for the Second Circuit, sitting by designation.

The Government also appeals, in effect, from the denial of its motion for summary judgment.

We deny the writs, as inappropriate in the present circumstances, and dismiss the appeal for lack of jurisdiction.

## Background

In 1972, the Rubber Manufacturers Association filed a then-anonymous complaint with the Treasury Department, asserting that certain benefits received by Michelin of Canada under a regional development program of the Canadian government, necessitated imposition of countervailing duties under section 303 of the Tariff Act of 1930, 19 U.S.C. § 1303 (1970).[1] Neither an unfair competitive advantage nor an injury to domestic interests was asserted. Treasury instituted a countervail proceeding, described by Michelin as the first against a specified company and its product rather than against all recipients of a benefit, the first concerned with a regional development program of general applicability, the first in which a complainant's constituents participated in that very program, and the first in which complainants' identity was initially secret.

On January 4, 1973, the Secretary of the Treasury (Secretary) assessed the requested countervailing duties, having determined that Michelin of Canada received bounties or grants under section 303. T.D. 73-10. On September 26, 1975, Michelin filed suit in the Customs Court, contesting the denial of its protest against the assessment. Michelin alleged that the Secretary erred, because Michelin of Canada had not received a bounty or grant, and that the Secretary's decision was improperly influenced by illegal contributions of domestic tire manufacturers to the Committee to Re-elect the President.[2]

Claiming that Michelin was not entitled to a trial *de novo* on the Secretary's decision, but was limited to a review of the administrative record, the Government moved for summary judgment, saying there were no material facts in issue.[3] Michelin responded that the "administrative record" was a fabrication, created long after the Secretary's decision by Justice Department

---

1. At that time, 19 U.S.C. § 1303 provided:

 § 1303. Countervailing duties.

 Whenever any country, dependency, colony, province, or other political subdivision of government, person, partnership, association, cartel, or corporation shall pay or bestow, directly or indirectly, any bounty or grant upon the manufacture or production or export of any article or merchandise manufactured or produced in such country, dependency, colony, province, or other political subdivision of government, and such article or merchandise is dutiable under the provisions of this chapter, then upon the importation of any such article or merchandise into the United States, whether the same shall be imported directly from the country of production or otherwise, and whether such article or merchandise is imported in the same condition as when exported from the country of production or has been changed in condition by remanufacture or otherwise, there shall be levied and paid, in all such cases, in addition to the duties otherwise imposed by this chapter, an additional duty equal to the net amount of such bounty or grant, however the same be paid or bestowed. The Secretary of the Treasury shall from time to time ascertain and determine, or estimate, the net amount of each such bounty or grant, and

shall declare the net amount so determined or estimated. The Secretary of the Treasury shall make all regulations he may deem necessary for the identification of such articles and merchandise and for the assessment and collection of such additional duties.

2. A bounty was either paid or not paid. If a bounty were paid, countervailing duties were statutorily mandated. If a bounty were not paid, no basis would exist for imposition of countervailing duties. Whether evidence of improper influence is relevant is a matter for initial determination by the trial court.

 Similarly, the Government's brief and appendix recite numerous instances of discovery and other interlocutory orders and actions of plaintiff and the court in which the Government sees some unfairness.

 Neither receipt of improper influence evidence nor the appended recitation is made the basis of the petition before us. Accordingly, we express no view thereon.

3. The Government had earlier filed a motion to limit the scope of trial in essentially the same respects. That motion was denied in *Michelin Tire Corp. v. United States,* 81 Cust.Ct. 157, C.R.D. 78-12 (1978).

lawyers responding to a motion to produce,[4] and that there were material fact issues. The court denied the motion, *Michelin Tire Corp. v. United States,* 82 Cust.Ct. ——, C.R.D. 79–6, 469 F.Supp. 270 (1979), and the Government filed the present petition.

### Issues

The issues are (1) whether there is a necessity for writs prohibiting the conduct of a trial *de novo* and limiting the scope of review to consideration of the administrative record in this case, and (2) whether this court should at this time issue an order directing grant of the Government's motion for summary judgment.[5]

### OPINION

### (1) *The Extraordinary Writ*

### (a) *Basic Considerations*

[5, 6] Neither the general rule limiting the appellate function to review of final judgments, nor the statute so limiting our appellate function, 28 U.S.C. § 2601(a) (1976)[6], can be evaded by use of an extraordinary writ in order to avoid delay entailing hardship, inconvenience, or an unnecessary

trial. *Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 383–84, 74 S.Ct. 145, 98 L.Ed. 106 (1953). The drastic nature of the writ dictates that it be issued only in extraordinary circumstances.

■ Traditionally, the writs here sought have been employed only when it appeared incumbent upon an appellate court "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Association,* 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). A writ may be the only available antidote to an attempted exercise of a non-existent jurisdiction, *United States v. Boe,* C.A.D. 1177, 543 F.2d 151, 64 CCPA 11 (1976), or it may be a needed and necessary remedy under circumstances amounting to a judicial "usurpation of power." *Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967).[7]

■ Though a narrowly or technically defined "jurisdiction" may not foreclose mandamus, *Kerr v. United States District Court,* 426 U.S. 394, 402, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976), the writ will not issue to

4. The statute does not specifically require the formal preparation of an administrative record. Later compilation of the materials and documents which the Secretary actually had before him at the time of his decision would not render that form of administrative record a fabrication. A proper review "on the record" can be accomplished only when that record includes all evidence presented by the parties and the reasons supporting the decision under review.

5. To the extent that the Customs Court's opinion in C.R.D. 79–6 implies or asserts that a trial *de novo* is appropriate in every case presented to the Customs Court, that implication or assertion is dictum. Thus, judgments in other cases, *e. g.,* that in *Suwannee Steamship Co. v. United States,* 79 Cust.Ct. 19, C.D. 4708, 435 F.Supp. 389 (1977) stand unaffected by anything said here or in the opinion in C.R.D. 79–6. Similarly, we decline comment on the extended discussion in C.R.D. 79–6 of matters such as the history of the Customs Court, its scope of authority, and lack of restraint on its determinations. Those matters are not at issue and need not be considered or decided by this court at this time.

6. 28 U.S.C. § 2601(a) provides:
 § 2601. Appeals from Customs Court Decisions

(a) A party may appeal to the Court of Customs and Patent Appeals from a final judgment or order of the Customs Court within sixty days after entry of the judgment or order.

Under 28 U.S.C. § 1541(b), this court has discretion to accept an interlocutory appeal certified by the Customs Court as involving a controlling question of law as to which there is a substantial basis for difference of opinion. The Customs Court twice refused a Government request for certification in the present case.

7. We do not here deal with a request for the supervisory writ discussed in *La Buy v. Howes Leather Co.,* 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957). Nor would that type writ be appropriate here. *La Buy* dealt with the Federal Rules of Civil Procedure, and was described by the Supreme Court in *Will v. United States, supra,* 389 U.S. at 104 n.14, 88 S.Ct. at 278, as "simply inapposite where there is no showing of a persistent disregard of the federal rules."

cure the mere commission of reversible error, *Banker's Life & Casualty Co. v. Holland, supra,* 346 U.S. at 382–83, 74 S.Ct. 145; and a petitioner must demonstrate (1) the absence of any other adequate means to obtain relief, and (2) a "clear and indisputable" right to the writ, *Kerr v. United States District Court, supra,* 426 U.S. at 403, 96 S.Ct. 2119.

The Supreme Court has recently cast doubt on use of the writ of mandamus to cure a mere abuse of discretion:

> Although the District Court's exercise of its discretion may be subject to review and modification in a proper interlocutory appeal, cf. *Landis [v. North American Co.],* 299 U.S. [248], at 256–259, [57 S.Ct. 163, 81 L.Ed. 153,] we are convinced that it ought not to be overridden by a writ of mandamus.[7] Where a matter is commit-

> [7] Although in at least one instance we approved the issuance of the writ upon a mere showing of abuse of discretion, *La Buy v. Howes Leather Co.,* 352 U.S. 249, 257, [77 S.Ct. 309, 1 L.Ed.2d 290] (1957), we warned soon thereafter against the dangers of such a practice. "Courts faced with petitions for the peremptory writs must be careful lest they suffer themselves to be misled by labels such as 'abuse of discretion' and 'want of power' into interlocutory review of nonappealable orders on the mere ground that they may be erroneous." *Will v. United States,* 389 U.S. 90, 98 n.6, [88 S.Ct. 269, 19 L.Ed.2d 305] (1967).

> \*　\*　\*　\*　\*　\*

> ted to the discretion of a district court, it cannot be said that a litigant's right to a particular result is "clear and indisputable."

[8.] The state of the law with respect to extraordinary writs is not of crystalline clarity. *See, e. g., Schlagenhauf v. Holder,* 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); *La Buy v. Howes Leather Co., supra; Colonial Times, Inc. v. Gasch,* 166 U.S.App.D.C. 184, 509 F.2d 517 (1975); *United States v. United States District Court,* 444 F.2d 651 (6th Cir. 1971), *aff'd,* 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972); *Kaufman v. Edelstein,* 539 F.2d 811 (2d Cir. 1976); *United States v. Sherman,* 581 F.2d 1358 (9th Cir. 1978); *American Airlines, Inc. v. Forman, supra; Pfizer, Inc. v. Lord,* 522 F.2d 612 (8th Cir. 1975), *cert. denied,* 424 U.S. 950, 96 S.Ct. 1421, 47 L.Ed.2d 356 (1976).

*Will v. Calvert Fire Insurance Co.,* 437 U.S. 655, 665–66 & n.7, 98 S.Ct. 2552, 2559, 57 L.Ed.2d 504 (1978) (footnote 8 omitted).

Concerning the applicability of statutory and common law jurisdictional standards, this court recently expressed the view that a writ may issue only when the challenged action is "so plainly wrong as to indicate failure to comprehend or refusal to be guided by unambiguous provisions of a statute or settled common law doctrine. If a rational and substantial legal argument can be made in support of the questionable jurisdictional ruling, the case is not appropriate for mandamus \*　\*　\*." *Formica Corp. v. Lefkowitz,* 590 F.2d 915, 921, 200 USPQ 641, 646 (CCPA), *cert. denied,* —— U.S. ——, 99 S.Ct. 2838, 61 L.Ed.2d 284, 202 USPQ 159 (1979) (quoting *American Airlines, Inc. v. Forman,* 204 F.2d 230, 232 (3rd Cir.), *cert. denied,* 346 U.S. 806, 74 S.Ct. 54, 98 L.Ed. 336 (1953)).[8]

### (b) *The Present Case*

[10] Application of the foregoing considerations to the present record reflects the absence of a basis for exercise of our discretion to grant the requested writs. That the Government may suffer hardship, inconvenience, or an unusually complex trial, provides no such basis. There is no challenge to the jurisdiction of the Customs Court over either persons or subject matter, and thus no need to confine that court to its prescribed jurisdiction or to order an exercise thereof.[9] If *de novo* conduct of the trial herein be error, that procedural error would not alone support mandamus. The Government has not demonstrated absence

[9.] The Government's assertion that usurpation of the Secretary's function will occur is premature. The final judgment of the Customs Court may support the Secretary's decision, may direct a remand, or may reverse the Secretary's decision upon a finding that a bounty was not paid. Only in the last instance could it be said that the Customs Court had substituted its judgment for that of the Secretary, and that action, if erroneous, is curable on appeal. We are not here persuaded that review *de novo* in itself, unlike the situation in *Ex parte Peru,* 318 U.S. 578, 63 S.Ct. 793, 87 L.Ed. 1014 (1943), so bears on the international affairs of the United States as to require mandamus.

of other means to obtain relief from an action so extraordinary as to give it a clear and indisputable right to the writs. An abuse of discretion, if it had here occurred, would not alone warrant mandamus. There are no statutory provisions and no common law doctrines setting forth the nature or scope of the review of countervailing duty assessments in the Customs Court; hence there can be no failure to comprehend or refusal to be guided by statute or legal doctrine.

 Finally, if it be assumed that an election between review *de novo* and review on the administrative record constitutes a questionable "jurisdictional ruling," the case would remain inappropriate for mandamus. Congress having supplied no guidelines or criteria for determining what constitutes a "bounty" and what does not, having made no requirement that the Secretary hold a hearing or make a record for review, or that the Administrative Procedure Act be applied, and having provided no definition of the nature of the judicial review to be conducted in countervailing duty cases, "rational and substantial legal arguments" can be made in support of both review *de novo* and review on an administrative record. The briefs before us on this petition contain numerous such arguments.

We indicate no view respecting the merit or propriety of either scope of review. Our limited holding is that mandamus will not lie, in the present unsettled state of the law, to prevent review of a countervailing duty determination through the mechanism of a trial *de novo* in this case.[10]

(2) *Motion For Summary Judgment*

 The Government incorporates in its petition for writs of mandamus and prohibition a request for an order directing the Customs Court to grant its motion for summary judgment. A lower court's denial of a summary judgment motion should not, however, be reviewed through the device of a prerogative writ. *Chappell & Co. v. Frankel,* 367 F.2d 197 (2d Cir. 1966).

 Moreover, though the Government's request appears in the last segment of its brief in support of its petition for the writs, it is in effect an appeal from the denial of its summary judgment motion and must be dismissed. Not being a final order or judgment, the denial of the present motion is not appealable. *In re Yarn Processing Patent Validity Litigation,* 541 F.2d 1127 (5th Cir. 1976); *Sabin v. Butz,* 515 F.2d 1061 n.6 (10th Cir. 1975); *American National Bank and Trust Co. v. Certain Underwriters,* 444 F.2d 640 (7th Cir. 1971). This court is without jurisdiction to review the challenged denial or to grant the requested order.

### Conclusion

The petition for writs of mandamus and prohibition is denied, the requested writs being inappropriate in the present circumstances. The appeal from the denial of the Government's motion for summary judgment is dismissed for lack of jurisdiction.

---

10. Absent intervening congressional direction, the question may be briefed, argued, and decided in an appeal from an adverse judgment resting on evidence adduced in a *de novo* trial and not before the Secretary at the time of his decision.